621 F.2d 130
 Janet CENANCE, Plaintiff-Appellee,
v.
BOHN FORD, INC., Defendant-Appellant,
Ford Motor Credit Company, Defendant-Appellant.
Nicole ANTONIO, Plaintiff-Appellant,
v.
CANAL MOTORS, INC., Defendant,
Ford Motor Credit Company, Defendant-Appellee.
Marion SHROPSHIRE, Plaintiff-Appellee,
v.
GEORGE THOMPSON FORD, INC., Defendant-Appellee,
v.
FORD MOTOR CREDIT CORPORATION, Defendant-Appellant.
Solomon WIGGS, Plaintiff-Appellee,
v.
FORD MOTOR CREDIT CORPORATION, Defendant-Appellant.
Jimmy W. FARRELL, Plaintiff-Appellee, Cross-Appellant,
v.
FRANK JACKSON MOTORS, INC., d/b/a Jackson AMC-Jeep,
Defendant-Appellant, Cross-Appellee.
Randolph BOOKER, Jr., Plaintiff-Appellee, Cross-Appellant,
v.
FORD MOTOR CREDIT COMPANY, Defendant-Appellant, Cross-Appellee.
Nicholas STRZELECKI, Plaintiff-Appellee,
v.
TERRY FORD COMPANY and Ford Motor Credit Company,
Defendants-Appellants.
Michael Duane CULVER, Plaintiff-Appellee,
v.
GREENBRIAR LINCOLN MERCURY SALES, INC. and Ford Motor Credit
Company, Defendants,
Ford Motor Credit Company, Defendant-Appellant.
Dennis VISSICHELLI, Plaintiff-Appellee,
v.
TERRY FORD COMPANY and Ford Motor Credit Company,
Defendants-Appellants.
Thomas J. ROGERS and Phyllis Rogers, Plaintiffs-Appellees,
v.
FRANK JACKSON LINCOLN-MERCURY and Ford Motor Credit Company,
Defendants-Appellants.
 Nos. 77-2200, 77-3508, 78-2369, 78-2914, 79-1139, 79-1584,
79-2227, 79-2340, 79-2449 and 79-2672.
 United States Court of Appeals,
Fifth Circuit.
 July 9, 1980.
 
 Peter A. Feringa, Jr., Norris S. L. Williams, New Orleans, La., for Ford Motor Credit Co. in Nos. 77-2200 and 77-3508.
 John M. Hollingsworth, Jr., Dearborn, Mich., for Ford Motor Credit Co. in No. 77-2200.
 William J. Wegmann, New Orleans, La., for Bohn Ford, Inc. in No. 77-2200.
 David S. Willenzik, New Orleans, La., for The Consumer Bankers Association, Wash., D. C., et al.
 Larry Samuel, New Orleans, La., for Louisiana Consumers' League, Inc.
 Joseph W. Thomas, New Orleans, La., for Cenance.
 Keith A. Rodriguez, New Orleans, La., for Antonio.
 Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Ford Motor Credit Co. in No. 77-3508.
 Morton P. Levine, Atlanta, Ga., for Ford Motor Credit Corp. in Nos. 78-2369, 78-2914, 79-2227, 79-2340, 79-2449 and 79-2672.
 E. Penn Nicholson, Paul W. Bonapfel, Atlanta Ga., for George Thompson Ford, Inc.
 Edward L. Baety, Atlanta, Ga., for Marion Shropshire and Solomon Wiggs.
 Burgess W. Stone, Atlanta, Ga., for Ford Motor Credit Corp. in Nos. 78-2369, 78-2914, 79-1139, 79-1584, 79-2227, 79-2340, 79-2449 and 79-2672.
 Hill, Jones & Farrington, Atlanta, Ga., for Wiggs.
 Joseph H. King, Jr., Atlanta, Ga., for Farrell.
 Bowen, Derrickson, Goldberg & West, Ralph S. Goldberg, Atlanta, Ga., for Booker.
 Graydon W. Florence, Jr., Atlanta, Ga., for Strzelecki and Vissichelli.
 Burgess W. Stone, Morton P. Levine, Atlanta, Ga., for defendant-appellant.
 Frank L. Derrickson, Atlanta, Ga., for Culver.
 Hill, Jones & Associates, Atlanta, Ga., for Rogers.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before COLEMAN, Chief Judge, PECK*, and KRAVITCH, Circuit Judges.
 KRAVITCH, Circuit Judge.
 
 
 1
 The common issues binding these consolidated cases are whether a finance company, Ford Motor Credit Co. (Ford), which routinely finances the sale of automobiles by dealers in exchange for assignment of the original note from the purchaser (1) is a creditor within the meaning of the Truth-in-Lending Act, and (2) whether designation of Ford as "subsequent assignee" adequately describes its relationship with the consumer debtor. We answer the first question "yes," the second "no."
 
 
 2
 All plaintiffs involved purchased automobiles on credit from various party automobile dealers. Each of the dealers had a similar standing agreement with Ford: as a prerequisite for the extension of credit, purchasers were required to submit a credit application to Ford on a form printed by Ford. If the application met with Ford's approval, Ford would purchase the credit instrument after execution by the dealer and purchasers without further participation or risk on the part of the dealer.
 
 
 3
 The Truth-in-Lending statement did not disclose Ford as a creditor but rather referred to Ford as a "subsequent assignee." The final portion of the statement provided:
 
 
 4
 The foregoing contract hereby is accepted by the Seller and assigned to Ford Motor Credit Company in accordance with the terms of assignment set forth on the reverse side thereof.
 
 
 5
 In all cases the district courts held that Ford was a creditor under the Truth-in-Lending Act and that such status had not been adequately disclosed in the Truth-in-Lending statement.
 
 A. Ford's Status as Creditor
 
 6
 The Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z thereunder define a creditor as one who, in the ordinary course of business, "regularly extends or arranges for the extension of consumer credit or offers to extend or arrange for the extension of such credit . . ." Reg. Z, 226.2(s), 12 C.F.R. § 226.2(s) (1976).
 
 
 7
 In Meyers v. Clearview Dodge, 539 F.2d 511 (5th Cir. 1976), this Court was first confronted by the question whether a downstream finance company was a creditor or subsequent assignee within the above provision of Regulation Z. In Meyers, the automobile dealer prearranged credit with one of several institutions, unlike the instant cases in which a standing agreement with only a single finance company existed. Holding that the dealer was the arranger of credit but that the finance company, Chrysler Credit, was the extender of credit, the court stated:
 
 
 8
 Chrysler Credit argues . . . that it is merely a "subsequent assignee" within the meaning of that term in section 1641 of the Act. Appellant insists that Clearview is the original creditor in this transaction, since at the moment the transaction was consummated Clearview was the holder of the note and chattel mortgage, and consequently the only one to whom appellee was obligated. However, appellant's argument elevates form over substance in an effort to avoid the realities of the credit transaction. Clearview never assumed any of the risks normally associated with the extension of credit in its dealings with appellee. By prearranging the assignment of the installment contract to Chrysler Credit, or any other institutional lender, Clearview merely arranged to sell the automobile for cash to be supplied by another. There is little doubt that in this transaction "credit," "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment," was extended by Chrysler Credit and arranged for by Clearview.
 
 
 9
 539 F.2d at 515, 516.
 
 
 10
 The Meyers analysis applies with even greater force to the instant situation because here the dealers regularly dealt only with Ford. The dealer and Ford prearranged for the assignment of the finance instrument. At no time did the risk of finance reside with the dealer. The transaction between dealer and automobile purchaser was conditioned upon acceptance of the credit application by Ford. Indeed, the credit application form was prepared by Ford. As in Meyers, it would be elevating form over substance to hold that Ford was anything but an original creditor within the meaning of the Act and Regulation Z.
 
 
 11
 In order to avoid the Meyers doctrine, the appellants contend that a recent provision passed in 1974, 15 U.S.C. § 1614,[1] limiting the liability of assignees, clearly expresses a Congressional intent that entities in the position of Ford are not to be treated as creditors. Although the section does address the liability of subsequent assignees, the appellants' argument begs the question of whether Ford is truly a "subsequent assignee" in substance rather than form. Simply denominating oneself as a subsequent assignee is insufficient. To enjoy the protection of the new provision, the company must be subsequent assignee in fact as well as name. Thus, the status of a loan participant is determined by the nature of the participation rather than a designation arbitrarily shown on the loan instrument.
 
 
 12
 Ford next argues that even if it is deemed a creditor for Truth-in-Lending purposes, the relationship between it and the debtor consumer was adequately disclosed in the statement concerning subsequent assignment. This issue was not reached by the court in Meyers because there no disclosure of Chrysler's participation in the transaction had been made. Although other circuits have held to the contrary,[2] we do not accept Ford's argument. The Truth-in- Lending Act requirement of disclosure of all creditors is quite clear. Section 226.6(d) of Regulation Z provides in part:
 
 
 13
 If there is more than one creditor . . . in a transaction, each creditor . . . shall be clearly identified . . . (emphasis added)
 
 
 14
 Disclosure of Ford as subsequent assignee does not "clearly" identify it as a creditor. Additionally, Ford cannot be both a creditor and a subsequent assignee. Meyers, supra, 539 F.2d at 515.[3] Accordingly, because Ford is a creditor for Truth-in-Lending purposes and did not disclose that status except by reference to assignment, we hold that Ford violated § 226.6(d) of Regulation Z and affirm the district courts.
 
 
 15
 B. Itemization of "Tag, Title and Registration Fees"
 
 
 16
 There remain to be disposed of issues not common to all the consolidated cases. Cenance, Strzelecki and Booker all involve the question whether "tag, title and registration fees" must be itemized separately. This recently has been answered negatively by this court in Downey v. Whaley Lamb Ford Sales, Inc., 607 F.2d 1093 (5th Cir. 1979). The district courts therefore are reversed on this issue.
 
 
 17
 Cenance also involves the question whether a $1.00 charge for lien or mortgage recordation was properly disclosed under the designation "license, title and registration fees." This issue is not one of improper itemization but rather misnomer. Because Regulation Z distinguishes the category embracing mortgage recordation fees from that of "license, tag and registration fees," the inclusion violated the Truth-in-Lending Act. Part b(1) of 12 C.F.R. § 226.4 is denominated "Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction." Section (b)(4) refers to: "License, certificate of title, and registration fees imposed by law." These separate definitions serve to differentiate charges paid to perfect mortgages from registration fees. This distinction is not without reason. A charge for "tag, title and registration fees" is independent of the nature of the transaction, whether cash or credit. A lien recordation fee, in contrast, will only occur in a credit transaction. Separate designation of these types of charges in the regulations compels the conclusion that fees paid to officials for the purpose of perfecting a security interest simply is not a "title, tag or registration" fee. Inclusion of the lien recordation fee under that heading therefore violated the Act. The district court, therefore, is affirmed.
 
 C. Responsibility of a Joint Creditor
 
 18
 Finally, in Shropshire and Wiggs, Ford argues that if it should be considered a creditor it is only liable for those violations which were within its purview. The particular violations are not at issue on appeal. Ford relies on 12 C.F.R. § 226.6(d)[4] which limits liability of joint creditors to those items within its knowledge and scope of relationship with the consumer. Because this question is factual in essence and the district court's findings are not clearly erroneous, we affirm.
 
 
 19
 We have considered the remaining points raised on appeal but find them without merit.[5]
 
 
 20
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN PART.
 
 
 
 *
 Circuit Judge of the Sixth Circuit, sitting by designation
 
 
 [1]
 15 U.S.C. § 1614 reads:
 Except as otherwise specifically provided in this subchapter (15 U.S.C. §§ 1601, et seq.) any civil action for a violation of this subchapter (15 U.S.C. §§ 1601, et seq.) which may be brought against the original creditor in any credit transaction may be maintained against any subsequent assignee of the original creditor where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary.
 
 
 [2]
 This particular issue is of first impression in this circuit. The Sixth, Seventh and Ninth Circuits have, however, uniformly held that conspicuous identification of a party in Ford's position as assignee adequately describes the relationship of the parties. Augusta v. Marshall Motor Co., 614 F.2d 1085 (6th Cir. 1979); Sharp v. Ford Motor Credit Co., 615 F.2d 423 (7th Cir. 1980); Milhollin v. Ford Motor Credit Co., 588 F.2d 753 (9th Cir. 1978). All, however, expressly declined to decide whether Ford was actually a creditor
 
 
 [3]
 Although Meyers involved the interpretation of 15 U.S.C. § 1641 rather than § 1614, the analysis is equally persuasive. Section 1641 provides:
 Except as provided in section 1635(c) and except in the case of actions brought under section 1640(d), in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgment of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and, unless the violation is apparent on the face of the statement, of compliance with this part. This section does not affect the rights of the obligor in any action against the original creditor.
 
 
 [4]
 Section 226.6(d) of Regulation Z provides as follows:
 (d) Multiple creditors or lessors; joint disclosure. If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this part which are within his knowledge and the purview of his relationship to the customer or the lessee. If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8 or paragraph (b) of § 226.15. (Emphasis supplied)
 
 
 [5]
 In Booker, Ford argues that summary judgment was improper because a genuine dispute as to a material fact existed. We agree and remand. We observe, however, that the court was correct in holding that the plaintiff had received a duplicate instrument as required by Regulation Z § 226.8(a). In Culver, Ford contends that it was entitled to a partial setoff based upon a settlement agreement between the dealer and the purchaser. The legal effect of the settlement was not raised below, however